UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MERRIL HOGE,

Plaintiff,

v.

MONSANTO COMPANY,

Defendants.

Case No. 4:25-cv-00277-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Defendant Monsanto Company's Motion for Summary Judgment. Dkt. 121. Plaintiff Merril Hoge opposes the Motion. Dkt. 125.

The Court held oral argument on September 16, 2026, and took the matter under advisement. Upon review, and for the reasons outlined below, the Court GRANTS in PART and DENIES in PART Monsanto's Motion.

## II. BACKGROUND

Merril Hoge mixed and sprayed Roundup over the course of many years beginning in 1977 at age 12 while working on farms in Idaho. In 2003, Hoge was diagnosed with non-Hodgkin lymphoma ("NHL"). In 2019, Hoge sued Monsanto, alleging Roundup caused his NHL. Dkt. 1. Hoge's lawsuit was transferred to a multi-district litigation panel. Dkt. 5. After discovery and general motion practice concluded, the case was remanded to the District of Idaho for purposes of trial. Dkt. 23. Trial was originally scheduled to begin on August 17, 2026. Dkt. 39.

On May 5, 2026, Monsanto moved to continue trial in light of a then-pending case before the Supreme Court—*Monsanto Co. v. Durnell.* Dkt. 45. Hoge opposed the Motion. Dkt. 49. The Court denied Monsanto's Motion, concluding the parties and the Court would likely have sufficient time to evaluate the impact of any decision before trial. Dkt. 52.

On June 25, 2026, the Supreme Court issued its decision. *Monsanto Co. v. Durnell*, 609 U.S. 371, 146 S. Ct. 2001 (2026).

In *Durnell*, the Supreme Court held that a "state-law failure-to-warn claim [that] would require a cancer warning on Roundup's label—a requirement 'in addition to' and 'different from' the label required by EPA under FIFRA"[1] was expressly preempted by federal claw. *Id*. at 2017 (quoting 7 U.S.C. § 136v(b)).

On July 2, 2026, Monsanto requested a status conference with the Court to discuss *Durnell* and its impact on this case. Dkt. 100. Hoge opposed the request. Dkt. 101. The Court granted Monsanto's request (Dkt. 102) and held a status conference on July 8, 2026 (Dkts. 106, 108). After evaluating the arguments of Counsel, the Court provided its thoughts and asked Monsanto to formally file a Motion to Continue Trial if it determined to go that route. *Id*. at 30.

Monsanto elected to file a Motion to Continue Trial. Dkt. 109. Hoge opposed. Dkt. The Court ultimately granted the Motion. Dkt. 121. "After a lengthy and detailed review" of *Durnell*, the Court determined "the best course of action [was] to continue trial and allow Monsanto to file a Motion for Summary Judgment based on *Durnell*." *Id*. at 3. With just

[1] FIFRA is the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq.

one month before trial, the Court decided "not to rush" and that it should give the parties a full and fair opportunity to develop and brief their respective arguments. *Id*. at 4.

The Parties filed their briefs (Dkts. 122, 125, 129), and the Cout held a hearing (Dkt. 131). The Court also reset trial for February 2027. Dkt. 123.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

The question now before the Court is simply this: how far does the Supreme Court's decision reach as it relates to Hoge's claims? Hoge has alleged three state-law causes of action in this suit: (1) negligence, (2) strict products liability – design defect, and (3) strict products liability – failure to warn. Dkt. 1, at 23–34.[2]

Hoge himself recognizes *Durnell* "narrowed" the scope of his claims. Dkt. 125, at 9. But he postures all of his claims survive "so long as they are not based on deficiencies in Roundup's product label." *Id*.

Monsanto's counter-argument is more "wholistic." It contends the Court must look at the "substance" of Hoge's claims. Dkt. 122-1, at 9. If the underlying substance of any claim is in any way related to labeling requirements, it is preempted and cannot proceed.

For the reasons below, the Court concludes Monsanto's reading of *Durnell* is unnecessarily broad and it will not grant summary judgment on all Hoge's claims. That said, based on *Durnell*—and in light of the evidence in this case—the Court will grant summary judgment on Hoge's failure to warn claim.

The Court begins by broadly discussing preemption. It will then address each of Hoge's claims.

### A. Preemption

As the Court has explained before, "preemption comes in three forms: express preemption, field preemption, and conflict preemption." *Katana Silicon Techs. LLC v.*

---

[2] Hoge originally had two additional claims for breach of warranties. *See* Dkt. 1, at 34–38. Hoge has since withdrawn those claims. Dkt. 93, at 5 n.1, 20.

*Micron Tech., Inc.*, 671 F. Supp. 3d 1138, 1149 (D. Idaho 2023). Field preemption and conflict preemption are types of what is commonly referred to as implied preemption. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022). And a subcategory of conflict preemption is impossibility preemption which occurs when it is "impossible for a private party to comply with both state and federal law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

FIFRA contains an express preemption provision. This provision, titled "Uniformity," preempts "any" state-law "requirements for labeling or packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). The clause protects "EPA's comprehensive and exclusive authority in registering pesticides and approving labels." *Durnell*, 146 S. Ct. at 2012.

Before any pesticide may be sold, EPA must approve it. 7 U.S.C. § 136a(a). By law, EPA cannot register (i.e., approve) a pesticide unless it "conclude[s] that the pesticide will not generally cause unreasonable adverse effects on human health." *Id.* at 2006 (citation modified). In doing so, EPA considers "the complete formula of the pesticide," including active and inert ingredients. 7 U.S.C. § 136a(1)(D); *see also* 40 C.F.R. §§ 152.3, 152.112(e). EPA must also determine that the "label includes all warnings necessary and adequate to protect human health." *Id*. at 2007 (citation modified).

In *Durnell*, the plaintiff (John Durnell) brought a failure-to-warn lawsuit in Missouri state court against Monsanto for not including a cancer warning on Roundup's label. Durnell alleged Monsanto failed to warn him of Roundup's cancer risks and that he developed NHL as a result.

The Supreme Court held that, because "Durnell's state tort claim would require Monsanto to add a cancer warning to Roundup's label even though federal law requires Monsanto to use the EPA-approved label without a cancer warning[] . . . FIFRA *expressly* preempts Durnell's claim." *Id*. at 2006 (emphasis added).

Hoge's position is that the Supreme Court's holding was straightforward: label-based failure-to-warn claims are expressly preempted. Monsanto's position is that, while the Supreme Court's ultimate holding may have been narrow, its implications are much broader. So much so, in fact, that Monsanto alleges *all* Hoge's claims are preempted because each is based—in whole or in part—on a label-based failure-to-warn theory.

This brings the Court to implied preemption, specifically impossibility preemption. These concepts were briefed by the parties and, at oral argument, Monsanto insisted the Court grapple with this as part of its decision today.

Monsanto recognizes the Supreme Court did not reach implied (or impossibility) preemption in *Durnell* because it concluded express preemption carried the day. Monsanto argues, however, that the lack of any discussion on the topic does not mean impossibility preemption does not apply; just that it did not apply in *Durnell*.

One argument underlying most of Hoge's claims is the notion that Monsanto knew glyphosate was harmful to humans, that it had other formulas for Roundup that did *not* include glyphosate, and that it chose not to make those changes—at least until much later.

Monsanto argues this whole line of reasoning is foreclosed by *Durnell* because it could not change the composition of Roundup without violating the original composition described at registration. Thus, it was "impossible" for it to make any changes to Roundup

without violating FIFRA and EPA and it cannot be held liable here. The Court is unpersuaded.[3]

There is no evidence in the record that the EPA prohibited Monsanto from changing its formula. Now, by all accounts, Monsanto had no plans to change its formula because it did not see anything wrong with the existing formula. But it could have. Its own witnesses have testified it knew of alternative designs that were feasible and available; one of which Monsanto eventually switched to. But to say Monsanto was *prohibited* from changing its formula and is, therefore, immune from suit is a bridge too far. The Court finds impossibility preemption does not apply here. Hoge cannot attack the label EPA approved that did not include a cancer warning. But there is nothing stopping him from challenging whether Monsanto could have or should have changed the formula or whether it should have otherwise warned users of cancer risks and that its failure to do so was *negligent*.[4]

---

[3] The Court takes some issue with Monsanto's whole premise here. For this argument, Monsanto relies heavily on a footnote from *Durnell* which reads as follows:

> Registration carries other consequences, too. FIFRA prohibits selling a pesticide "if any claims made for it . . . substantially differ" from any claims made in "the statement required in connection with its registration." 7 U.S.C. § 136j(a)(1)(B). And FIFRA prohibits selling a pesticide if its "composition" differs from the composition described at registration. § 136j(a)(1)(C).

*Durnell*, 146 S. Ct. at 2007 n.1. Importantly, this comment came on the heels of the Supreme Court's summary of the EPA's "comprehensive regulatory role" and the idea that a manufacturer could be liable for misbranding if it sold a product that did not include a warning when a warning was required. This footnote expanded upon that idea by discussing other registration consequences and the notion that a manufacturer cannot sell a pesticide that is different than what it received permission to sell at registration. Importantly, however, this footnote does not say a product could not be changed or that a new formulation could not be approved, registered, and marketed; just that the product sold must match the approval. By the Court's reading, the emphasis Monsanto seeks to put on this footnote is overstated.

[4] Again, this argument must be viewed within the applicable claim. Hoge is preempted from a label-based failure to warn claim. But he is not preempted from arguing Monsanto had a duty under Idaho law to produce and advertise a safe product.

Again, Monsanto can argue it had no reason to discuss cancer risks because there were none. But Monsanto cannot hide behind impossibility preemption when there is no evidence indicating it could not have pursued changing Roundup's formula with the EPA *had it wanted to*.[5] Impossibility preemption does not bar Hoge's claims.

In addition to preemption, Monsanto argues *Durnell* forecloses all of Hoge's claims on the merits. Finally, Monsanto argues that, even if any of Hoge's claims are left after *Durnell,* summary judgment is still warranted because Hoge does not have sufficient facts to present to a jury to support any of his claims. The Court turns now to Hoge's claims.

**B. Negligence and Failure to Warn**[6]

The elements of a negligence claim under Idaho law are "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1169 (Idaho 2011). A person breaches a duty, and thus acts negligently, when that person acts in a manner in which a reasonable person would not. *See Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1128–29 and n.3 (Idaho 2007) (describing

[5] Said another way, regardless of whether it was "impossible" to change the formula without EPA approval, it was not impossible to *ask* EPA to change the formula. This is a subtle but important distinction. There was nothing prohibiting Monsanto from complying with federal labeling laws and state negligence laws. It could have gone through the process of changing the formula if it wanted to. Lest it be lost, Monsanto eventually did just that: it changed the formula. Now, there is clearly a dispute about whether Monsanto had a duty to do any such thing in the 70s, 80s, or 90s—based, again, on the disagreement regarding whether Roundup was harmful or not—but there is no evidence it was "impossible" for Monsanto to comply.

[6] These are two distinct claims. However, Hoge briefed them in tandem. And, substantively, they are connected. Thus, for ease, the Court likewise discusses them simultaneously.

the reasonable person standard as the "negligence standard of care").

Under Idaho law, "[f]ailure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence." *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1181 (Idaho 1999).

As noted, Hoge readily admits he can no longer argue Monsanto's failure to warn customers about cancer via a label was negligent in light of *Durnell*. He contends, however, that he has plenty of other options to prove Monsanto was negligent and failed to bring significant health and safety concerns to the public's attention as it relates to the manufacturing, advertising, and use of Roundup. Case in point, Hoge has listed eighteen "acts and/or omissions" indicative of Monsanto's negligence in his first cause of action. Dkt. 1, at 23-24. Only one of those relates to labeling. *Id*. at ¶ 134(r).

Hoge also explains that, regardless of the labelling question, he can put forth evidence that Monsanto knew about genotoxicity concerns and adverse findings in the scientific literature surrounding Roundup, yet its marketing conveyed a materially different message to consumers, including Hoge. He alleges this evidence illustrates Monsanto was negligent and failed to warn the public of potential concerns. The Court agrees in part.

1. <u>Negligence</u>

Hoge's negligence claim is broad enough that it is *not* wholesale preempted by *Durnell.* To be sure, some of the language in his Complaint discusses labeling and Monsanto's failure to warn. Hoge will not be allowed to put on evidence of any labeling (or lack thereof), but he can pursue this claim with any other relevant testimony and evidence indicative of negligence. There is nothing in *Durnell* to suggest its holding should

be read so broadly as to encompass negligence claims that are not based on labeling.

The question, then, is whether there are any disputed facts regarding Hoge's negligence claim. That is ultimately Monsanto's point. In other words, in addition to the overarching theme that *Durnell* forecloses all Hoge's claims, Monsanto's primary argument is that Hoge's claims fail on the merits because he does not have any non-label based evidence to present at trial. In Monsanto's estimation, because Hoge focused on his label-based theory during discovery, he is left with little to nothing to support any other negligence or failure to warn argument. The Court disagrees.

Hoge's claim is based upon the broad theory that Monsanto:

> [F]ailed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Roundup into interstate commerce in that Defendant knew or should have known that using Roundup created a high risk of unreasonable, dangerous side effects, including, but not limited to, the development of NHL . . .

Dkt. 1, at 23. He has expert witnesses who will opine on these points. And while these concepts overlap to some degree with Hoge's design defect claim, the legal standards are different and Hoge can elaborate more in this claim about Monsanto's actions (or lack thereof) in regard to its public interactions, whereas the design defect claim is, for lack of a better term, more "scientific" in nature.

One final comment. Like its argument regarding preemption, Monsanto counters it was "prohibited" from making *any* claims about Roundup that differed from those approved by the EPA and from even suggesting Roundup causes cancer. But again, Hoge is not necessarily saying Monsanto should have warned him that Roundup caused cancer;

just that it was potentially dangerous for his health (or, more accurately, that Monsanto *should not* have advertised Roundup as safe and harmless when it purportedly knew of potential adverse effects).[7]

In short, it is hotly contested whether Roundup causes cancer. Academic, scientific, legislative, and medical minds differ on this question. And it is hotly contested whether Monsanto had a duty to warn the public about any potential side effects from Roundup. All of these are disputed facts that will be presented and adjudicated at trial within Hoge's negligence claim.

2. Failure to Warn

The same, however, cannot be said of Hoge's failure to warn claim. Again, all parties admit Hoge cannot attack Roundup's label in light of *Durnell*. Hoge claims however, that while labelling was his primary focus, his Complaint contains other allegations regarding ways Monsanto could have warned him (and the general public) about the potential dangers of Roundup. This may be true. But those other theories are severely under-developed—because again, Hoge focused on his label-based theory during discovery. The only additional theory Hoge can focus on at this stage relates to advertising.

Monsanto specifically objects to the idea that Hoge can rely on advertising to support his failure to warn claim because, by all accounts, *Hoge never saw any advertisements* about Roundup. Monsanto asserts this fact dooms his claim and that

[7] To be clear, this will be a tough line for both parties to tow. Hoge cannot turn this into a failure-to-warn claim based on labelling. But he can argue Monsanto designed a dangerous product and didn't warn anyone about the product. Monsanto can counter that it designed a safe product and had no reason to warn anyone about anything. The Court would encourage the parties to hew closely to the negligence framework—duty, breach, causation, damages—and try to avoid pitfalls that could cause consternation for all involved.

summary judgment is appropriate.[8]

During Hoge's deposition, the following exchange occurred:

> Q. Do you recall ever seeing any Roundup advertisements at that time?
>
> A. No, sir.
>
> . . .
>
> Q. Do you remember seeing any commercial or advertisements for Roundup during the time you were using it for residential use?
>
> A. No, sir.

Dkt. 122-4, at 7, 10. Monsanto alleges this admission illustrates any advertising evidence is out.

More recently—as part of the prior motion practice leading up to trial—Hoge filed a declaration clarifying his testimony: "[W]hile I do not remember seeing any specific commercials or advertising, I have seen Roundup commercials as they have been on TV since I was a teenager. I just do not 'remember' which specific commercials I have seen." Dkt. 93-2. Monsanto now claims this affidavit is a "sham" and should not be considered because it contradicts the prior testimony and, more specifically, because it contains facts that Hoge previously testified he could not remember. Dkt. 122-1, at 13 (*citing Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("Several of our cases indicate that a district court may find a declaration to be a sham when it contains facts that the affiant previously

---

[8] It bears repeating that Hoge has various facts and arguments (e.g. theories) to support this claim. Monsanto has focused on one here: advertising. To the degree this theory is weak (or strong) can be fleshed out at trial. But the Court has a difficult time focusing on a single aspect of Hoge's claim where there is—by both Parties' admissions—a robust record *on both sides* regarding the safety and efficacy of Roundup.

testified he could not remember.”)). Hoge now seeks to harmonize his deposition testimony and the follow-up affidavit by emphasizing he does not remember specific commercials or advertisements but knows he likely saw something; thus, there is no contradiction between his statements. The Court is not convinced that argument holds water. If Hoge cannot clearly remember seeing any commercials about Roundup, but only assumes he did, it will be difficult for him to testify competently about what those commercials did, or did not, include in the way of safety and/or warnings. This concerns the Court.

To be sure, Hoge has *alleged* other theories—besides labeling and advertising—that underpin his failure to warn claim. But as already noted, there is limited evidence in the record to support any other theory. Also, Monsanto’s point is well taken that its duty when it comes to warnings likely cannot run with advertisements in general—because who knows what a prospective consumer may or may not see—but with labelling. Simply put, the Court is concerned that, were it to allow this claim to proceed to trial, Hoge would essentially be arguing a failure to warn labeling claim just without the word “label.” This cuts against the *Durnell* decision.

The Court wishes to make abundantly clear, however, that it is not holding a state-based, failure to warn claim could never be alleged against Monsanto—including one based on advertising. The Court is only finding such a claim cannot proceed *in this case* because the evidence is not there.

3. <u>Conclusion</u>

Hoge’s negligence claim is not limited to labels. It is not limited to commercials or advertising either. He has alleged a variety of acts or omissions that demonstrate Monsanto

manufactured, promoted, and sold an unsafe product that caused him harm and that it did so knowingly and negligently. This claim is, therefore, not preempted and does not run afoul of *Durnell*. Moreover, there are disputed facts that preclude summary judgment.

The same cannot be said for Hoge's failure to warn claim. While his allegations were broader than labeling, the evidence is simply not there. His testimony about not seeing advertisements but claiming some might have existed is insufficient. The Court also harbors concerns about label-adjacent theories and does not want to run the risk of getting too close to *Durnell's* prohibition on claims that, although not strictly label-based, are "disguised" as such. Summary judgment is, therefore, appropriate on this claim.

**C. Hoge's Design Defect Claim**

"In order to establish a prima facie case in a products liability action, the plaintiff has the burden of proving that 1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer." *Massey v. Conagra Foods, Inc.*, 328 P.3d 456, 460 (Idaho 2014) (citation modified). The Idaho Supreme Court has noted, "the prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." *Id.* (quoting Prosser, Torts, § 99, p. 659 (4th ed.1971)); *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1311 (Idaho 1976). "Idaho law does not require a plaintiff to provide expert testimony to establish defect." *Peregrine Falcon LLC v. Piaggio Am., Inc.*, 446 F. Supp. 3d 654, 663 (D. Idaho 2020).

To begin, this claim is not preempted under *Durnell*.[9] Monsanto's efforts to shoehorn this claim into a failure-to-warn claim are unpersuasive. It suggests Hoge's design defect claim is really a failure-to-warn claim because Hoge contends the product was unsafe for customers and the only way customers know about a product's safety is "through their labels." Dkt. 129, at 4. However, as explained above, there are other ways a company can warn, and a consumer can learn, about a product's safety (or the lack thereof). Again, Hoge's design defect claim is not that Roundup should have had a warning label, nor merely that glyphosate can cause cancer. Instead, he claims the Roundup formulation was itself defective, that it caused his NHL, and that Monsanto should not have sold it in that form. This is a permissible theory not precluded by *Durnell*. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005) ("Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for

[9] Hoge focuses on two exchanges from oral argument in *Durnell* to buttress his arguments. In the first, Justice Barrett asked, "Are design defect claims preempted?" Dkt. 93-22, at 32. Monsanto's Counsel, Paul Clement, responded thus: "They're only preempted if they are disguised failure-to-warn claims. . . . And, here, it's really just on the labeling. But, you know, the only reason I do hesitate is because it's obviously tempting in a world where you can bring design defect claims but not failure-to-warn claims that you try to make a design defect. Well, the design problem here is the way you designed your label or that you failed to warn. So, with that caveat, design defect claims are not preempted." *Id*. at 32–33. Later, Monsanto's counsel called back to that exchange confirming "this is where my answer that you can still have design defect claims is important because that could be part of the process where additional information is generated and ultimately brought to the -- the attention of the agency." *Id*. at 42. Finally, in an exchange with Justice Gorsuch, the Principal Deputy Solicitor General reiterated that "A design defect claim that is not masquerading as a failure-to-warn claim is permissible under Bates for the reasons Mr. Clement said and the reasons that Bates itself recognizes." *Id*. at 51. The Court appreciates the implications of these exchanges. And fundamentally, it agrees. However, the *Durnell* decision is completely void of any commentary on this point. Design defect claims are not mentioned at all. Thus, this colloquial between the Supreme Court and various attorneys is persuasive at best.

'labeling or packaging.' None of these common-law rules require that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted.").

Setting aside *Durnell*, the narrower question is, once again, whether Hoge has sufficient evidence to present to a jury that would allow them to find Roundup was defective and did not meet the normal expectations of consumers *without* referring to labels. Monsanto claims Hoge has no such evidence, and accuses him of trying to "piece together" and "salvage" claims he "did not pursue in discovery." Dkt. 129, at 2–3. The Court disagrees.

To be sure, most of Hoge's claims included some aspect of his failure-to-warn theory premised on labeling. Thus, it is understandable that, post-*Durnell,* he had to re-strategize his claims to a certain degree. But to reiterate, Hoge's claims have always been bigger than simply a failure to warn based upon a label.

And specifically, as it relates to his design defect claim, Hoge's allegation is that Roundup's chemical formulation is unsafe. Full stop. *See e.g.*, Dkt. 1, at 27–28 ("Roundup was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff"; Roundup was "defective in design . . . [and] the foreseeable risks exceeded the benefits associated with the design or formulation of Roundup"; Roundup was "unreasonably dangerous in normal use, and it was more dangerous than an ordinary consumer would expect"; "Roundup was in a defective condition and unsafe, and Defendant knew or had reason to know that said product was

defective and unsafe, especially when used in the form and manner as provided by the Defendant.").[10]

In short, Hoge has alleged since the beginning that Roundup was defectively designed, that its chemical formulation made it unsafe (contrary to his reasonable expectations), and that it caused his NHL. As other courts have noted, causation is not an issue for summary judgment. *See, e.g.*, *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1152 (N.D. Cal. 2018) ("[P]laintiffs have presented evidence from which a reasonable jury could conclude that glyphosate can cause NHL at human-relevant doses.").

Hoge has gathered support for those allegations by way of expert testimony and other relevant evidence. Monsanto has amassed a significant amount of evidence to the contrary. There are clearly disputed facts regarding Hoge's design defect claim that must go before a jury for resolution.

Monsanto's final argument is that Hoge cannot prevail on this claim without an expert or without evidence of a safer, alternative design. Both assertions are incorrect.

Hoge does not need an expert to opine on his design defect claim. The Idaho Supreme Court "has explicitly refused to require a plaintiff to proffer expert testimony as part of its prima facie products liability case." *Massey*, 328 P.3d at 461; *see also Peregrine Falcon LLC*, 446 F. Supp. 3d at 663 (accord); *Fouche v. Chrysler Motors Corp.*, 692 P.2d 345, 348 (Idaho 1984) ("Though it is no doubt true that a plaintiff may bolster his or her case considerably through the use of expert testimony, we nevertheless decline to require

---

[10] Notably, the word "label"—or the idea of labeling—does not appear once in Hoge's design defect claim.

such expert testimony for the establishment of a plaintiff's prima facie case.").

Nor is Hoge *required* to present evidence of a feasible alternative design to buttress his claims. *See Hepburn v. Boston Sci. Corp.*, 2018 WL 2275219, at *5 (D. Idaho 2018) ("A plaintiff *may* prove a design defect by presenting evidence of feasible alternative designs, available to the manufacturer, that would have lessened the risk associated with the product.") (emphasis added).

Strategically, if Hoge had filed his lawsuit fresh today, post-*Durnell*, he may have made different choices regarding claims and discovery. But discovery in this case is long closed. Neither party has asked for discovery to be re-opened, and the Court will not do so at this late stage. Hoge can proceed with this claim on the evidence he has, and Monsanto can rebut that with testimony and evidence of its own. But there is nothing in *Durnell* that forecloses this claim as Monsanto suggests and there are disputed facts that cannot be resolved at this posture. Summary judgment is not appropriate on this claim.

## V. CONCLUSION

The Court will be frank. *Durnell* threw a wrench in this case. And while the Supreme Court clarified certain issues with its ruling, other matters remain open to interpretation.

Upon review, the Court finds impossibility preemption inapplicable. None of Hoge's claims are preempted by virtue of *Durnell* except those specifically related to a failure to warn claim based on labeling.[11] The Supreme Court's decision was sufficiently

[11] Consistent with the Court's findings above, Hoge has not alleged sufficient facts *outside* of labelling and, therefore, summary judgment is appropriate on his entire failure to warn claim. But to be clear, the Court makes that finding on the facts of this case; a failure to warn claim can still be pleaded in this type of case if facts exist to support it.

tailored, and the Court sees no reason to expand that holding as Monsanto suggests. Furthermore, there are disputed facts regarding any design defects or risks associated with Roundup, whether Monsanto was negligent in its production and marketing of Roundup, and whether Roundup caused Hoge's NHL. These remaining issues cannot be adjudicated at summary judgment and must proceed to trial.

## VI. ORDER

1. Monsanto's Motion for Summary Judgement (Dkt. 122) is GRANTED in PART and DENIED in PART as outlined above.
    a. Summary judgment is granted as to Claim Three (Strict Products Liability – Failure to Warn).
    b. Summary judgment is denied as to Claim One (Negligence) and Claim Two (Strict Products Liability – Design Defect).[12]
2. The Parties will meet and confer as to the implications of this Order (and *Durnell*) on the pending motions in limine (Dkts. 55–76) and file a notice regarding which motions remain at issue and whether any supplement briefs are necessary.

DATED: October 1, 2026

David C. Nye
U.S. District Court Judge

[12] In light of this holding, Monsanto's previously-filed Motion for Summary Judgment (Dkt. 66) is likewise GRANTED in PART and DENIED in PART. While that motion was filed at a procedurally different posture, Monsanto's arguments—at least those that are still applicable post-*Durnell*—were essentially the same as its current motion: that Hoge does not have sufficient evidence to support his claims. Consistent with the Court's ruling today, two of Hoge's three claims survive because there are disputed facts and the strengths and weaknesses of either side's case will be fodder for trial.